IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ADAM DALE LOW                    )
                                 )
    v.                           )   NO: 1:17-0054
                                 )
KRISTEN BUTTRAM, et al.          )

**TO:** Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

By Order entered June 19, 2017 (Docket Entry No. 4), this prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment (Docket Entry No. 46) of Defendants Kristen Buttram, Jordan Kiddy, Robert Wesson and Robyn Todd, to which Plaintiff has made several filings in opposition to the motion. *See* Docket Entry Nos. 49, 52, 53, 56, and 57. For the reasons set out below, the undersigned Magistrate Judge respectfully recommends that the motion be granted and this action be dismissed.

### I. BACKGROUND

Adam Dale Low ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") confined at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. On June 5, 2017, he filed this lawsuit *pro se* and *in forma pauperis* seeking relief under 42 U.S.C. § 1983 for violations of his federal constitutional rights alleged to have occurred at the SCCF.

Plaintiff alleges that SCCF staff failed to take appropriate action to protect him from violence at the hands of other inmates despite his requests to staff for protection. He further contends that he was locked in his cell and deprived of food for three days because he complained to SCCF staff about his need for protection.

Specifically, Plaintiff alleges that in the early afternoon of March 24, 2017, he informed Unit Manager Kristen Buttram ("Buttram"), Captain Jordan Kiddy ("Kiddy"), and Sergeant Robert Wesson ("Wesson") that his "life was in danger." *See* Complaint (Docket Entry No. 1 at 6). He alleges that they responded by laughing at him, telling him to pay his drug debts, and escorting him to his cell, where they locked him in his cell without food for three days, from March 24 to 26. Plaintiff alleges that they also stated to other inmates in the housing pod that he was trying to get himself placed on protective custody. *Id*. Plaintiff alleges that, on March 27, he filed a grievance about the actions of the officers and also called a hotline to report that he was being threatened with assault. *Id*. Plaintiff alleges that, on March 27, he told Sergeant Robyn Todd ("Todd") about his need for protection, but she responded that she would not place him on protective custody and that he would have to find another way to leave if that was what he wanted. *Id*.

Plaintiff alleges that two days later, on the evening of March 29, he was assaulted by an inmate who choked and repeatedly punched him in the face and head while two other inmates held knives to him before he broke free and ran from his attackers. *Id*. He further alleges that he reported the incident to his housing pod correctional officer and to Todd, who again told him that she would not put him on protective custody. *Id*. Instead, Todd allegedly placed Plaintiff in segregation for refusing a cell assignment after he would not return to his cell because he feared being attacked

2

again. Plaintiff contends that the attack has left him with severe neck pain and constant headaches and that the inmates who attacked him were not disciplined. *Id.*

Upon initial review of the complaint under 28 U.S.C. §§ 1915 and 1915A, the Court found that Plaintiff stated colorable constitutional claims based on his allegations of being denied protection and being deprived of food for three days. *See* Docket Entry No. 3. Process was issued to Buttram, Kiddy, Wesson, and Todd (hereinafter referred to collectively as "Defendants"). After Defendants filed a joint answer, *see* Docket Entry No. 14, a scheduling order was entered providing for a period of pretrial activity in the action. *See* Docket Entry No. 15.

## II. MOTION FOR SUMMARY JUDGMENT

On April 23, 2018, Defendants filed their motion for summary judgment. In support of their motion, Defendants rely upon: (1) Plaintiff's responses to written discovery requests (Docket Entry Nos. 48-1 and 48-2); (2) the declarations of Defendants Buttram (Docket Entry No. 48-2), Kiddy (Docket Entry No. 48-4), Wesson (Docket Entry No. 48-5), and Todd (Docket Entry No. 48-6); (3) the declaration of three other SCCF staff - Brenda Pevahouse (Docket Entry No. 48-7), Heather Banks (Docket Entry No. 48-8), and Jesse James (Docket Entry No. 48-9); and, (4) a Statement of Undisputed Material Facts (Docket Entry No. 48).

Defendants raise a technical defense to the lawsuit, arguing that Plaintiff filed his complaint before he exhausted the administrative remedies available at the SCCF and, thus, he failed to comply with the exhaustion requirement of the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), prior to filing the lawsuit. Defendants also challenge the merits of Plaintiff's claims. With respect to the failure to protect claim, Defendants argue: (1) Plaintiff never made them aware

3

of specific information about a threat to his safety prior to March 29, 2017; (2) Plaintiff failed to follow the proper procedure to officially request placement in protective custody; (3) the undisputed evidence contradicts Plaintiff's discovery responses about the identity of the inmates whom he alleges assaulted him; and, (4) the undisputed medical evidence is not consistent with Plaintiff's allegation that he was choked and repeatedly punched in the head, and, instead, shows only a minimal physical injury. With respect to the claim that Plaintiff was not fed for three days, Defendants deny that they withheld food from Plaintiff as alleged and maintain that the SCCF housing logbook for his housing unit does not support such a claim and contradicts any allegation that Plaintiff was locked in his cell without food for three days.

Plaintiff has responded in opposition to the motion to dismiss through a variety of filings. *See* Docket Entry Nos. 49, 52, 53, 56, and 57. He disputes that he failed to attempt to exhaust his administrative remedies and asserts that he filed a grievance about the matter that was not responded to by prison officials. *See* Docket Entry No. 53 and 53-1. He further contends that it is undisputed that he was ultimately placed in protective custody by other prison officials on April 26, 2017, because of the assault he alleges occurred on March 29, 2017. Plaintiff disputes Defendants' contention that he failed to alert them to the risk to his safety posed by the other inmates and asserts that he did everything possible to warn Defendants of his need to be protected. *See* Docket Entry Nos. 49, 56, and 57.

In reply, Defendants argue that much of Plaintiff's response is supported by unauthenticated evidence that is not admissible and should not be considered. They further argue that: (1) Plaintiff has abandoned his lack of food claim by not responding to their arguments for dismissal of the claim; (2) the undisputed facts show that Plaintiff's version of the events could not possibly be true; and,

4

(3) Plaintiff's contention that he told Defendants that he "feared for his life" is not sufficient to show that Defendants were aware the Plaintiff was actually at a substantial risk of harm prior to the alleged assault. *See* Defendants' Reply (Docket Entry No. 51).

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion

must present affirmative evidence to support his or her position. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

After review of the parties' filings, the Court finds that the motion for summary judgment should be granted based on Defendants' lack of exhaustion defense. Because the lack of exhaustion requires dismissal of this action in its entirety unrelated to the merits of any underlying claims, the Court declines at this time to consider Defendants' motion as it pertains to arguments for dismissal on the merits of Plaintiff's underlying claims.

42 U.S.C. § 1997e(a) of the PLRA requires a prisoner to first exhaust all available administrative remedies before filing a lawsuit under 42 U.S.C. § 1983 that brings claims seeking redress for prison conditions, circumstances, or occurrences. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA's exhaustion requirement is mandatory. *Ross v. Blake*, _ U.S. _, 136 S. Ct. 1850, 1856, 195 L. Ed. 2d 117 (2016). Once the affirmative defense of failure to exhaust is raised and supported by a defendant, the burden falls to the prisoner plaintiff to present significant probative evidence showing that he has complied with the PLRA's exhaustion requirement. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

In the instant case, Defendants have raised the defense of failure to exhaust and have supported the defense with the declaration of Brenda Pevahouse ("Pevahouse"), who is the current grievance chairperson at SCCF. *See* Docket Entry No. 48-7. Pevahouse declares that the SCCF follows the TDOC grievance policy, which permits inmates to submit written grievances "concerning the substance or application of a written or unwritten policy or practice, any single behavior or action

6

toward an inmate by staff or other inmates, or any condition or incident within SCCF which personally affects the inmate." *See* Declaration at ¶ 5. The inmate grievance process has three levels of review: (1) an initial review by a Grievance Chairperson, who issues a response that is returned to the inmate; (2) a review upon an appeal to the Grievance Committee and Warden; and, (3) a final review upon an appeal to the Deputy Commissioner of the TDOC, whose decision is final. *Id*. at ¶ 8.

Pevahouse declares that her review of the Tennessee Offender Management Information System ("TOMIS"), a computerized database into which all inmate grievances are recorded, shows that Plaintiff has filed ten grievances at the SCCF since November 2016 but that a grievance about Defendants and the underlying conduct at issue was not filed until Plaintiff filed a grievance, #24902/315784, that was received on June 5, 2017. *Id*. at ¶¶ 11-13. Pevahouse declares that this grievance was denied on June 6, 2017, after which Plaintiff pursued his first level appeal on June 8, 2017, and then sought a final appeal on June 14, 2017, afer the Warden denied his first level appeal. *Id*. at ¶ 12. Pevahouse declares that, on July 5, 2017, the TDOC Deputy Commissioner of Operations denied Plaintiff's final appeal. *Id.*

Defendants argue that Plaintiff filed his grievance against Defendants at essentially the same time as he signed and mailed his complaint to the Court in this lawsuit.[1] Defendants contend that it is undisputed that Plaintiff did not exhaust this grievance through all levels of review and receive

---

[1] Although Plaintiff's grievance was marked as received by prison officials on June 5, 2017, Plaintiff dated the grievance May 30, 2017. *See* Docket Entry No. 48-7 at 8. Similarly, although Plaintiff's complaint was not stamped as received by the Clerk's Office until June 5, 2017, it was signed by him on May 31, 2017. *See* Docket Entry No. 1 at 1 and 5.

7

a final decision until July 5, 2017, nearly a month after filing this lawsuit. In light of this chronology of facts, they argue that Plaintiff clearly failed to fully exhaust his administrative remedies prior to filing his lawsuit as required by the PLRA. *See* Defendants' Memorandum in Support (Docket Entry No. 47) at 6.

In response, Plaintiff does not address the issue of the timing of his June grievance. Instead, he asserts that he filed a grievance about this matter on March 27, 2017, but that the grievance was "lost" or not acted upon by prison officials. *See* Docket Entry No. 53 at 1. In both his complaint and in various other filings, Plaintiff refers to a "lost" grievance about the underlying events that he contends that he filed on March 27, 2017. *See* Complaint at 3; Docket Entry No. 5 at 2; Docket Entry No. 57 at 2, ¶ 8. In support of this assertion, Plaintiff provides a copy of a grievance dated March 27, 2017, that refers to the events at issue, as well as an "Inappropriate Grievance Notification," dated March 29, 2017, from SCO Leigh Staggs, which states that the grievance is deemed inappropriate to the grievance procedure because it pertains to "classification matters/institutional placement" and is not legible. *See* Docket Entry No. 53-1. Although not clearly stated by Plaintiff, he appears to assert that he never received the inappropriate grievance notification at the time it was issued but somehow later received a copy of the notification while gathering evidence in his case. *Id*.

The law is clear that the PLRA requires "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). Therefore, a prison grievance must be fully exhausted through all available levels of administrative

appeal before the grievance can satisfy the PLRA and permit a lawsuit to be filed. *See Reed-Bey*, 603 F.3d at 324 (holding that proper exhaustion requires a prisoner to take advantage "of each step the prison holds out for resolving the claim internally"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (recognizing that a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999) (prisoner cannot abandon the grievance process before completion).

Accordingly, the grievance filed by Plaintiff on May 30, 2017, and received by prison officials on June 5, 2017, does not satisfy Plaintiff's exhaustion requirement. It is undisputed that this grievance was filed at or about the same time as Plaintiff filed his complaint and that the grievance had not been pursued and exhausted by Plaintiff through all the available levels of administrative appeal before Plaintiff filed his lawsuit. Indeed, at the time the lawsuit was filed, the grievance had not even been acted upon by prison officials, a fact noted by Plaintiff in his own complaint when he refers to this grievance as "pending." *See* Complaint at 3.

Thus, Plaintiff's compliance with the PLRA's exhaustion requirement hinges upon the grievance that he asserts he filed on March 27, 2017, and that he contends was "lost" or not acted upon by prison officials. Defendants have not addressed the issue of the purported March 27, 2017, grievance, and Plaintiff's supportive filing on the matter is sufficient to at least raise a colorable, albeit inartfully supported, factual question on the issue.[2]

---

[2] As with many *pro se* litigants, Plaintiff's response to the motion for summary judgment consists largely of unsworn statements and copies of documents which are unaccompanied by an affidavit or declaration that provides a foundation for the document. Generally, an unsworn statement cannot be considered as evidence rebutting the motion for summary judgment, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 969 (6th Cir. 1991), and documents submitted in opposition to a motion for summary judgment must be authenticated by being sworn to or certified in order to be

9

However, the Court finds that this factual question is not enough to defeat Defendants' PLRA exhaustion defense. Although the Supreme Court has recently clarified that there are some factual scenarios under which an inmate's attempt to use the grievance process is so compromised that the administrative remedy is made effectively "unavailable" and, thus, an inmate's duty to exhaust available remedies does not come into play, *Ross*, 136 S.Ct. at 1859, these scenarios are limited. An administrative remedy is not "available" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the "administrative scheme ... [is] so opaque that it becomes, practically speaking, incapable of use," or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. Plaintiff has not argued, nor do the facts before the Court otherwise show, that any of these three scenarios is at issue.

In the instant case, Plaintiff alleges only that he filed a grievance and did not receive a response. Without more, this minimal allegation is not sufficient to show compliance with the PLRA's exhaustion requirement or that administrative remedies were not available. Even assuming Plaintiff filed the March 27, 2017, grievance as he alleges, he took no further action to follow up on the grievance and the lack of a response until nearly two months later when he filed his second

---

considered by the Court. *See* Rule 56(e) of the Federal Rules of Civil Procedure; *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007); *Moore v. Holbrook*, 2 F.3d 697, 698-99 (6th Cir. 1993). However, given the absence of a response by Defendants to the issue of the March 27, 2017, grievance, the Court shall grant Plaintiff some leeway and will consider the copies of grievance documents that have been filed by him and are part of the record at Docket Entry No. 53-1.

grievance on May 30, 2017.[3] TDOC's grievance policy specifically provides inmates with an available avenue to continue the grievance process even if they are not provided with a response. *See* TDOC Policy #501.01.D ("if a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response.").[4] Thus, when Plaintiff did not receive a response to his grievance within the seven day period during which a Level I response should have been made, he still had a remedy under the TDOC grievance policy to advance the grievance to the Level II stage. His failure to pursue this remedy forecloses any argument that prison officials' failure to respond to his grievance rendered the grievance process unavailable. *See Pool v. Klenz*, 2018 WL 1989637 at *3 (6th Cir. Jan. 17, 2018) (prison inmate who alleged that prison official did not respond to his grievance filings failed to demonstrate that the grievance process was not available because the applicable grievance procedure provided for steps the inmate should have taken in the absence of a response that would have allowed him to continue the process).

At a minimum, Plaintiff should have taken some prompt steps to inquire with prison officials about his grievance or to further pursue the grievance that he asserts he filed. Given the record that is before the Court, it appears that Plaintiff did nothing for nearly two months. In such a situation, the Court does not find that the administrative grievance process was effectively made unavailable to Plaintiff. In the end, the Court finds that Plaintiff has not provided probative evidence showing

---

[3] Although Plaintiff writes in his May 30, 2017, grievance that "this is the 3rd grievance I've filed on this issue," *see* Docket Entry No. 48-7, he clearly states in his complaint that he filed only two grievances, on March 27, 2017, and May 30, 2017. *See* Complaint at 3, § 2.C.

[4] *See* https://www.tn.gov/content/dam/tn/correction/documents/501-01.pdf. Although Pevahouse refers to the TDOC grievance policy in her declaration, Defendants did not file the policy as part of the record in this action

11

either his compliance with the PLRA or that the administrative grievance process was unavailable to him under *Ross*. Accordingly, this action should be dismissed for failure to comply with the PLRA's exhaustion requirement.

## RECOMMENDATION

Based on the forgoing, the undersigned respectfully RECOMMENDS that the motion for summary judgment (Docket Entry No. 46) of Defendants Kristen Buttram, Jordan Kiddy, Robert Wesson and Robyn Todd be GRANTED on the grounds of Plaintiff's failure to comply with the exhaustion requirement of the Prison Litigation Reform Act and that this action be DISMISSED WITH PREJUDICE.[5]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.03(b)(1). A failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140,

---

[5] Although the norm in the Sixth Circuit is to dismiss actions for failure to exhaust without prejudice, the Sixth Circuit previously affirmed a decision of this Court that dismissed with prejudice a Section 1983 action for failure to exhaust where to do otherwise would be futile because the time to file a grievance had long since run. *See Howard v. State of Tennessee Department of Correction*, 1:12-00004 (M.D. Tenn., July 2, 2013)(Campbell, C.J.)(dismissing cause of action with prejudice for failure to exhaust)(*aff'd* 6th Cir. No. 13-6095, mandate issued July 16, 2014). Inasmuch as the alleged events that gave rise to this action occurred more than one year ago, the time for Plaintiff to exhaust his administrative remedies has long since passed, and it would serve no useful purpose to dismiss this action without prejudice to give him an opportunity to exhaust his administrative remedies.

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after being served with a copy of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

                                                Respectfully submitted,

                                                BARBARA D. HOLMES
                                                United States Magistrate Judge